UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

NAOMI CARRASCO,
Individually and as Survivor of
PGT, and Estate of PGT, Deceased
    Plaintiff,

No. 7:19-CV-86

JURY TRIAL DEMANDED

V.

ECTOR COUNTY INDEPENDENT SCHOOL DISTRICT,
TEXAS EDUCATION AGENCY,
Dr. Gloria Baumstimler,
Principal Sheila Stevenson,
Special Education Teacher Ms. Baeza,
Coach Mathes,
Assistant Principal Nesbit,
Assistant Principal Rafael,
Superintendent Thomas Crowe

    Defendants,

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW NAOMI CARRASCO ("Mother"),** Individually, and as surviving heir, on behalf of the estate of her child, PGT, Deceased, hereinafter collectively termed Plaintiffs, by and through their attorney of record, Kevin Acker, Acker Law Firm PLLC and complaining of Ector County Independent School District ("school district") of Odessa, Ector County, Texas, Texas Education Agency ("TEA") of Austin, Travis County, Texas, Dr. Gloria Baumstimler of Odessa, Ector County, Texas, Principal Sheila Stevenson of Odessa, Ector County, Texas, Special Education Teacher Ms. Baeza of Odessa, Ector County, Texas, Coach Mathes of Odessa, Ector County, Texas, Assistant Principal Nesbit of Odessa, Ector County, Texas, Assistant Principal Rafael of Odessa, Ector County, Texas, Superintendent Tom Crowe of Odessa, Ector

County, Texas hereinafter referred to as Defendants, asserting causes of action for violations of federal and state law and administrative code provisions promulgated thereunder. In support of thereof Plaintiffs would respectfully show the following:

## I. Introduction and Review of the Case

1. On or before the 2011-2012 school year and thereafter until the death of the child PGT in April 2018, this case is about a child with a disability, PGT, being bullied, harassed by other students, bullied, harassed, and exorcised and mocked by a teacher in front of classmates, allowed to be home schooled to remove the child from the ongoing problems, discriminated against by the school district because of the child's disability, and discriminated against because the child chose to use the persona of a male as "Jet". The TEA failed to have a hearing on a Complaint filed with the agency dated July 18, 2017, further the TEA failed to have a hearing or issue an order fro a Request for Special Education Mediation. The TEA official had a video satellite feed with other parents of other bullied and harassed disabled children, but no hearing or order was issued. The child lost faith in his ability to live when told by the special education teacher that test results had been falsified to pass the child out of the school system so that they did not have to deal with this special needs child. Without adequate education and an honest education, the child lost hope and committed suicide. The school district has an affirmative duty to protect children with disabilities and gender matters from bullying and harassment, by creating a climate and culture that does not tolerate such acts. In additions, a school district also has an affirmative duty to protect a specific child with a disability, when that child has been identified as a victim of bullying and harassment. The failure to do so would leave the school district open to civil liability. (Sec. 504 of the Rehabilitation

Act of 1973, 29 U. S. C. Section 794.

2. The Office of Civil Rights has provided guidance to school districts, specifically delineating the various elements of a safe school, or at least providing those items that must be provided to assure that a school district would not be liable for disability discrimination or gender discrimination bases upon the failure to protect a student with a disability from bullying, and harassment, and discrimination.

3. The application of the Office of Civil Rights standards relative to the Defendant school district in this case would show that this district failed to establish and maintain an environment that addressed problems with bullying and harassment in general. Further, and specifically in regard to PGT, the district failed to intervene in a timely and appropriate manner, to the bully and harassment that victimized PGT's experience at school, and made the child's young life one of torment.

4. It is because of these failures that Plaintiffs bring suit against the school district for violation of PGT's civil rights pursuant to 42 U. S. C. Section 1983, 1988, the 5th and 14th Amendments to the United States Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S. C. 794a ("Rehabilitation Act") and the Texas Human Resources Code (Tex. Hum. Res. Code Section 121.001 et seq. the "THRC") as well as other common law and statutory claims. Such equitable and remedial actions include but are not limited to certain compensatory services, costs, reimbursement of out-of-pocket expenses attorney fees and costs, as well as other forms of equitable relief.

5. In addition, because PGT is a student with a disability, as contemplated by the Individual with Disabilities Education Act, "IDEA"), 20 U.S.C. Sec. 1401 et seq., the child was required to administratively exhaust any claims related to IDEA and educational issues before bringing forth

the discrimination cause of action. This has been and appeals any Hearing Officer's decision in that administrative action.

## II. Jurisdiction

6. Jurisdiction is conferred upon this Court pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, including federal regulations issued thereunder and 42 U.S.C. Sec. 1983, 1988; the 5th and the 14th Amendments to the United States Constitution. The Court also has jurisdiction under these causes of action to award equitable relief including attorneys' fees and costs to the Plaintiffs pursuant to 42 U.S.C. Sec. 2000d et seq.

7. In addition, the Court also has jurisdiction over this cause pursuant to 20 U.S.C. Sec. 1415(i)(3)(A) and 19 Texas Administrative Code (T.A.C.) Sec. 89.11.85(p), giving this Court jurisdiction to address erroneous decisions made by a Texas Education Agency ("TEA") Hearing Officer, as Plaintiffs allege herein. This Court also has jurisdiction to award equitable relief including an award of attorneys' fees, and costs to Plaintiffs pursuant to 20 U.S.C. Sec. 1415 (i)(3)(B).

8. This Court also has authority to hear supplemental state law claims pursuant to 28 U.S.C. Sec. 1367.

## III. Venue

9. Venue properly lies in the Western District of Texas, Midland-Odessa, Division, pursuant to the general venue statute, 28 U.S.C. Sec. 1391 (b) because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Texas.

## IV. Parties

10. Naomi Carrasco brings forward this complaint on her Individual behalf and as natural mother also on behalf the Estate of her deceased child, PGT, and continues to reside within the Ector

County Independent School District in Ector County, Texas.

11. The child was eligible to receive public education services from the Defendant school district. The student was, before an untimely death, a student with a disability, as contemplated by IDEA and the Rehabilitation Act, at all pertinent times during the relevant periods contemplated by this law suit.

12. Defendant Ector County Independent School District in Ector County, Texas is a public school district organized under the laws of the State of Texas and at all times was responsible for the care, management, and control of all public school business within its jurisdiction as to Plaintiff PGT Deceased, training of teachers at the school as to safety, abuse and neglect of students and supervision of students within the district, for on-campus and off-campus activities and for the course of study. It receives federal funding and is thereby required to follow the requisites of the Rehabilitation Act noted above. The school may be served by serving a school district employee or representative at its administrative offices at 802 N. Sam Houston, Odessa, Ector County, Texas 79761.

Defendant Texas Education Agency, a State of Texas agency for the public exists under the laws of the State of Texas and at all times was responsible for the care, management, and control of statewide public school business within its jurisdiction as to Plaintiff, PGT, Deceased. The TEA may be served by serving a representative of the Texas Education Agency at their Austin headquarters, William B. Travis Building, 1701 N. Congress Avenue, Austin, Texas 78701.

Defendant Gloria Baumstimler is an Individual and school district personnel, 1307 Doran Dr., Odessa, Texas.

Defendant Principal Sheila Stevenson, ECISD 802 N. Sam Houston, Odessa, Texas

79761.

Defendant Special Education Teacher Ms. Baeza, ECISD 802 N. Sam Houston, Odessa, Texas 79761.

Defendant Coach Mathes, ECISD 802 N. Sam Houston, Odessa, Texas 79761.

Defendant Assistant Principal Rafael, ECISD 802 N. Sam Houston, Odessa, Texas 79761.

Defendant Assistant Principal Nesbit, ECISD 802 N. Sam Houston, Odessa, Texas 79761.

Retired Superintendent Thomas Crowe, ECISD 802 N. Sam Houston, Odessa, Texas 79761.

## V. Administrative Exhaustion

13. As noted above, before a party may bring a claim in federal or state court, where a student's education program is under question, that party must first exhaust administrative remedies, 20 U.S.C. Sec. 1415 (!) And 19, T.A.C. Sec. 89.1185(p). Plaintiff has met that burden and states that all conditions precedent to the filing of this lawsuit have occurred, however no hearings ever occurred.

## VI. State Action

14. The Defendant school district was at all times and in all matters acting under color of state law when they permitted PGT to be subjected to the wrongs and injuries hereinafter set forth.

15. In addition, the Defendant school district receives funds from the federal government, thus the school district is required to follow the requisites of Section 504 of the Rehabilitation Act of 1973 and the Individuals With Disabilities Education Act.

16. The Defendant school district is a policy-maker for itself. As such, the Defendant school

district is responsible for formulating policies, practices, and procedures for the school during the events made the basis of this litigation, whether it be in whole or part.

## VII. Statement of Facts

17. PGT, before death, resided with mother within the jurisdictional boundaries of the Ector County Independent School District in Ector County, Texas, which is within the Western District of Texas. It is a legally constituted independent school district within the State of Texas. It is responsible for providing PGT a free appropriate public education in accordance with IDEA.

18. The school district purportedly has a stated policy of "zero tolerance' regarding peer-on-peer bullying and harassment, and also for school district personnel–to-student.

19. It is also the responsibility of the district to keep PGT safe from bullying and harassment by school district personnel and peers, in accordance with Section 504 of the Rehabilitation Act of 1973.

20. PGT was a seventeen year old disabled student, previously and continuously eligible for special education and related services as a child with Tourette's syndrome, ADHD, OCD, and severe anxiety, and other learning disabilities in all areas, who after being continuously and openly bullied and harassed by school district personnel and peers, was then shunted to home school, where the child's school records were falsified by school personnel, including but not limited to state mandated exams, school assignments, and records, by school personnel in an effort to move PGT through the system without providing the child with a free appropriate public education. When informed of this fact and multi-year forgery, the child immediately lost hope with the future of the child and became withdrawn, severely depressed, which quickly escalated to suicide.

21. Dr. Gloria Baumstimler falsified the work product of the child and this was discovered after

an interview with her replacement and failed to teach basic survival skills like counting money to the child, always delaying the need for actual educating.

22. While at public school under Principal Stephenson, the child was routinely referred to by school district personnel and peers as "the evil possessed girl".

23. Further, school district personnel provided a one assignment math semester to the child with pre-school Teddy Bears on it, which informed the child that the school district personnel failed to meet their duty and the child would be unable to function in society.

24. The child was subjected to public ridicule by a school district teacher in front of the child's peers. The ridicule, which included a mock exorcism, resulted in relentless bullying and harassment and shaming of the child by peers, which significantly increased the child's severe anxiety, which resulted in medical treatment and hospitalization. Numerous attempts were attempted to have Cook Children's Hospital specialists consult with school district personnel as to the best methods of dealing with the child's medical issues in the educational setting. No one from the school district showed for the first couple of scheduling conferences. On a subsequent try, school district personnel failed to take notes and occupied their smart phones. This level of apathy and active gross negligence of school district personnel exorcising the evil demons from PGT.

25. PGT developed psychological protective responses to the constant torment which included taking on aspects of a male figure and anime, for which the child was further tormented by school district personnel and peers.

### VIII. Claims for Relief Pursuant to the Rehabiliation Act of 1973

26. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

27. Section 504 of the Rehabilitation Act of 1973, 29 USC Sec. 794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure that all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability, or fails to protect the student against a known harm, it violates Section 504.

28. Plaintiffs assert that the Defendant school district has violated PGT's rights pursuant to the Rehabilitation Act. Defendant's practices and/or proposed actions, set out in detail above, have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuant thereto. The Defendant school district has discriminated against PGT based upon the child's disability, a violation of Section 504 of the Rehabilitation Act of 1973 in the following manner and particulars:

a. Inform parents of the procedures to report bullying and harassment and how to proceed if those concerns are not addressed;

b. Hire, train, or supervise staff in the implementation of requirements of "disability discrimination" pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29 USC Section 794 and its implementing regulations at 34 CFR Part 104;

c. Provide training for students concerning disability discrimination, bullying and harassment;

d. Provide mandated procedural safeguards and notice requirements to the family in a timely manner;

e. Include an informative writing on Section 504 in the student handbook;

f. Include an informative writing on Section 504 on the Internet page of Defendant school

district;

g. Provide mandated notices of Section 504 Coordinator to the family;

h. Provide mandated notices of the Defendant school district grievance procedure to the family;

i. Provide a culture open to receiving a grievance;

j. Provide a culture open to a constructive response to a grievance based upon bullying and harassment;

k. Respond to grievances in a timely manner;

l. Keep a complete written and/or electronic record of such grievances;

m. Acknowledge the problem of bullying and harassment toward PGT based upon the child's disability;

n. Cease the district school personnel and students' bullying and harassment of PGT;

o. Provide appropriate and ongoing counseling for PGT;

p. Provide appropriate and ongoing counseling for perpetrators, including teacher and peers;

q. Offer a transfer to PGT in a timely manner;

r. Provide a trained paraprofessional dedicated to monitor PGT's safety at school;

s. Take appropriate measures to prevent bullying of PGT which included but not limited to developing a curriculum to address the bullying, actually educate PGT, holding assemblies for the student body with the message that bullying was not to be tolerated and disciplining perpetrators; and

t. Generally accommodate PGT's disability and respond to the bullying and harassment which affected the child, through appropriated education and services commensurate with the child's disability and the child's unique and individualized needs, which were not being met in part due to apathy and omissions, and fraudulently falsifying state mandated exam, assignments and

school records of the child PGT.

## IX. Constitutional and Civil Right Claims

29. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

30. Defendants, acting under color of law and acting pursuant to customs and policies of the school district, deprived PGT of rights and privileges secured to the child by the Fourteenth Amendment to the United States Constitution and by other laws of Texas and the United States, by failing to implement, follow and enforce policies that are supposed to protect PGT from harm and be free from an unsafe environment for education, by tolerating violation of those policies, by failing to properly investigate incidents and omissions of duties on th part of its school district personnel toward PGT ad of injurious conduct on the part of its student, and by failure to take proper corrective action after becoming aware of injuries resulting from neglect toward a student with a disability.

31. Because Defendants were aware of injuries to PGT prior to the incidents made the basis of this cause of action, and because Defendants took no or ineffective corrective action, they acted with conscious indifference to PGT's rights and the rights of students similarly situated.

32. Defendants' decision to not properly investigate the repeated bullying and harassment of PGT and to not discipline the peer or school district personnel bullies, and to repeatedly limit PGT's actions when PGT had significantly diminished capacity to communicate and defend against the bullies, and created that PGT became an ongoing target, constituted actionable discrimination and emotional, mental, and physical abuse, clearly in violation of clearly-established law and deprived PGT of his right to life, liberty, and bodily integrity guaranteed under the Fourteenth Amendment to the United States Constitution, for which Defendants are liable to PGT under

42 U.S.C. Sec. 1983 for compensatory monetary damages. The Constitutional violations set out in this complaint proximately caused injuries, damages, and the death of PGT.

## X. Unconstitutional policies, procedures and practices

33. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

34. The Defendants received multiple complaints and notices of misconduct in the discipline of bullies who attached PGT and the mistreatment of PGT within the district. However, the Superintendent, Principals, Assistant Principals, Counselors, Teachers and Special Education personnel wholly failed to address and to investigate allegations of abuse resulting from misconduct in the discipline and mistreatment of PGT, and other students similarly situated..

35. The Principal and Assistant Principal are policy-makers for such matters and set policies for school rules and polices regarding special education procedures for maintaining order in the classroom. The TEA failed to have a hearing on a Complaint filed with the agency dated July 18, 2017, further the TEA failed to have a hearing or issue an order fro a Request for Special Education Mediation. The TEA official had a video satellite feed with other parents of other bullied and harassed disabled children, but no hearing or order was issued.

36. There are no Ector County ISD guidelines that dictate the methods special education teachers must use to keep disabled students safe from bullying and harassment, leaving such policies up to the authority of employees in the vicinity of such bullying and harassment.

37. On the school district's website, the policies are silent about bullying, harassment, Section 504, and how such would affect a student with disabilities.

38. During the relevant time period that PGT attended school and was educated by the Defendant school district, the Defendant school district did not provide staff training on disability

discrimination, bullying or harassment.

39. During the relevant time period the school district failed to provide any student assemblies or training on disability discrimination during the years that PGT attended the Defendant school district.

40. Defendant school district personnel failed to follow through on reports of bullying and harassment from students, including PGT, which resulted in injury to PGT.

41. Defendant school district personnel failed to ensure that the typical classroom environments for special education students would protect them from assault and abuse and that such events would be promptly reported.

42. The Defendant school district personnel in their official capacities did not take reports of bullying and harassment of PGT seriously and fostered improper practices, policies and procedures involving special education students, including PGT, displayed a pattern of conscious indifference to the inappropriate and dangerous behavior provided in those reports.

43. The Defendants actions and inactions offend and violate those canons of decency and fairness that express the notions of justice protected by the Fourth Amendment to the United States Constitution as well as a deprivation of PGT's right to bodily integrity guaranteed under the Fourteenth Amendment and are thus actionable under Section 42 USC 1983.

**XI. Violations of the Individuals with Disabilities Education Improvement Act 2004**

44. Plaintiffs incorporate by reference all of the above related paragraphs with the same force and effect as herein set forth. To the degree that a policy or practice inhibits honest consideration of the child's unique educational needs, the school fails to provide a free appropriate public education "FAPE", and thus violates IDEA. Plaintiffs assert that the Defendant school district has violated the childs's rights to FAPE. The Defendant school district's acts, omissions and

practices, as set out in detail herein, have all, when taken together or separately, contributed to violating the child's rights pursuant to IDEA and federal regulation promulgated pursuant thereto the Texas Education Code and the rules promulgated by the State Board of Education. The Hearing Officer erred in applying IDEA to the special educational failures of the Defendant school district.

## XII. Violations of Texas Human Resources Code

45. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

46. Chapter 121 of the Texas Human Resources Code provides that a person may seek a civil remedy in a Court of competent jurisdiction if that person has been denied access to a facility or a program in this state supported, in whole or in part, by public funds and if an entity has failed to make reasonable accommodations in its policies, practices, and procedures to the complainant.

47. The Defendant school district effectively and constructively denied PGT's right to access the school in the same manner as non-disabled persons, and failed to provide the appropriate accommodations so that the child could attend public school, the child's rights under the Texas Human Resources Code were violated thereby.

## XIII. Limitations

48. Plaintiffs recognize that in the underlying administrative cause by the Texas Education Agency failed to recognize and erred in that the tolling provisions under 20 U.S.C. Sect. 1415(f)(3)(A-D); 34 C.F.R Sect. 300.511(e).

49. In addition and in the alternative and notwithstanding the specific tolling provisions of IDEA, Plaintiffs have brought cause of action pursuant to Sectio 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sect 794, which is not controlled by the limitations period note in IDEA.

50. Also, in addition and in the alternative, Plaintiffs rely on any and all relevant other statutory and common law tolling provisions and theories, including but no limited to the theories of "equitable tolling" and "continuous violation".

51. Plaintiffs also argue that the one-year statute of limitations period as contemplated by 19 T.A.C. Sect 89.1151 is unconstitutional, as it is irrational and in addition and in the alternative, is in any case unconstitutional and irrational as applied to PGT.

## XIV. Proximate Cause

52. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

53. Each and every, all and singular of the foregoing acts and omissions on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XV. Damages

54. As a direct and proximate result of the Defendants' conduct, PGT, has suffered the following injuries and damages, which he is entitled to recover herein within the jurisdictional limits of this Court:

a. Medical and mental health expenses in the past;

b. Physical pain and mental anguish in the past;

c. Physical impairment in the past

d. Loss of life

e. By and through the mothe, who has individually suffered and incurred out-of-pocket expenses incurred but for the acts and omissions of Defendants, including but not limited to funeral

expenses.

## XVI. Attorney Fees

55. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

56. It was necessary for Plaintiffs to hire the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorneys fees and costs under 42 U.S.C. Sect 1988(b), 20 USC Sect 1401 et seq., 29 USC Sect.794a, 42 USC Sect 2000 et seq., as well as pursuant to the Texas Human Resource Code.

## XVII. Demand for Jury Trial

57. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XVIII. Wrongful Death

58. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

59. At all times relevant, it was incumbent upon and the duty of Defendants, their employees and agents to comply with applicable standards of care and all local, county, state, and federal statutes when learning of and responding to student and parental complaints of bullying, harassment, and failure to meet standards of special education.

60. Defendants failed to comply with its duties and obligations as previously cited heretofore including but not limited to:

a. Inform parents of the procedures to report bullying and harassment and how to proceed if those concerns are not addressed;

b. Hire, train, or supervise staff in the implementation of requirements of "disability

discrimination" pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29 USC Section 794 and its implementing regulations at 34 CFR Part 104;

c. Provide training for students concerning disability discrimination, bullying and harassment;

d. Provide mandated procedural safeguards and notice requirements to the family in a timely manner;

e. Include an informative writing on Section 504 in the student handbook;

f. Include an informative writing on Section 504 on the Internet page of Defendant school district;

g. Provide mandated notices of Section 504 Coordinator to the family;

h. Provide mandated notices of the Defendant school district grievance procedure to the family;

i. Provide a culture open to receiving a grievance;

j. Provide a culture open to a constructive response to a grievance based upon bullying and harassment;

k. Respond to grievances in a timely manner;

l. Keep a complete written and/or electronic record of such grievances;

m. Acknowledge the problem of bullying and harassment toward PGT based upon the child's disability;

n. Cease the district school personnel and students' bullying and harassment of PGT;

o. Provide appropriate and ongoing counseling for PGT;

p. Provide appropriate and ongoing counseling for perpetrators, including teacher and peers;

q. Offer a transfer to PGT in a timely manner;

r. Provide a trained paraprofessional dedicated to monitor PGT's safety at school;

s. Take appropriate measures to prevent bullying of PGT which included but not limited to

developing a curriculum to address the bullying, actually educate PGT, holding assemblies for the student body with the message that bullying was not to be tolerated and disciplining perpetrators; and

t. Generally accomodate PGT's disability and respond to the bullying and harassment which affected the child, through appropriated education and services commensurate with the child's disability and the child's unique and individualized needs, which were not being met in part due to apathy and omissions, and fraudulently falsifying state mandated exam, assignments and school records of the child PGT.

61. As a proximate result of the aforementioned acts of negligence, and gross negligence, PGT was caused to suffer humiliation, intimidation, fear, and feelings of despair and depression.

62. In the days, hours, and minutes leading up to the child's suicide, PGT suffered from profound emotional pain and suffering and mental anguish, as well as feelings of despair, depression, and worthlessness. As a proximate result of the continued humiliation of Plaintiffs by Defendant school district and other defendants, on April 1, 2018 caused by the negligence, gross negligence and dereliction of duties to the child, PGT committed suicide.

63. That as a further proximate result of the actions and omissions of Defendants culminating in the death by suicide of PGT, Plaintiffs have in the past and will in the future each individually suffer from profound emotional distress, sorrow, mental and emotional anguish, because of the permanent loss of a child, with the knowledge and belief that the child suffered from profound despair in the days and hours leading up to the child's death. Likewise, Plaintiffs have lost the comfort, care, and companionship that PGT offered to them on a daily basis throughout the child's life and would have provided in the future.

64. That Plaintiffs have in the past incurred funeral expenses and related expenses incurred

secondary to the child's death, and lost anticipated future income.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendants and request an order including but no limited to the following relief:

a. A judgment in favor of Plaintiffs, as supported by a finding that the TEA failed in part, when failing to hold proper hearings to determine that the Defendant school district provided PGT with a free appropriate public education as contemplated by the Individuals with Disabilities Education Act during periods claimed.

b. A judgment in favor of Plaintiffs, as supported by a finding that Defendants did not appropriately accommodate PGT's disability pursuant to Section 504 of the Rehabilitation Act of 1973 during periods claimed in total or in part.

c. A judgment in favor of Plaintiffs in an amount sufficient to fully compensate them for the elements of damage enumerated above.

d. An order directing Defendant school district to effectuate the various anti-bullying and harassment requirements as set forth by the Office of Civil Rights.

e. An order directing Defendant school district to take any and all other specific actions required by Section 504 of the Rehabilitation Act of 1973.

f. An order directing Defendants to pay or reimburse Plaintiffs for all costs of care, including but not limited to therapeutic costs and other out-of-pocket educational, medical, and transportation costs for treatment, and funeral expenses.

g. An order declaring Plaintiffs as prevailing party so that Defendants will be required to pay or reimburse Plaintiffs for all costs of preparation and trial of this cause of action and also the

underlying administrative procedures heard before a TEA officer, to include but not be limited to filing fees, costs of representation, advocate fees, attorney fees, and expert witness fees, incurred by them up to and through trial, and for its appeal if required, as previously stated, together with pre- and post-judgment interest, and Court costs expended here, and

h. Such other relief as the Court may deem just and proper in law or in equity.

**Respectfully submitted,**

ACKER LAW FIRM, PLLC

Cell: 432.940.6037 Email: kevin.acker@hotmail.com

Office:1109 S. Calvin Avenue, Monahans, TX 79756

**/s/ Kevin Acker, Lawyer, SBN 00831100**

ATTORNEY FOR PLAINTIFFS